## GETCHELL *v.* CHASE, and DODGE, Tr.

In the absence of fraud, no action can be maintained for the recovery of the consideration paid for a quitclaim deed of land, though the grantor had no title.

As a general rule, a trustee cannot be charged, unless, at the time of the disclosure, the principal had a right of action against him for some indebtedness, or property in his possession, or unless the trustee had in his hands personal property belonging to the principal, which the latter had the legal right to take.

A trustee cannot be charged on account of any tort, nor where the claim is for unliquidated damages.

Where the trustee conveyed, by quitclaim deed, to the principal defendant, a tract of land to which he had no title, but supposed at the time that he had, and received therefor a horse, and the note of the principal for the balance — *Held*, that the trustee was not chargeable.

FOREIGN ATTACHMENT.    The trustee disclosed as follows:

In the spring of 1848 I made a bargain with the said Chase, to sell him certain real estate in Hampton-Falls. He was to let me have a horse, and pay me four hundred dollars for the same. I gave him a quitclaim deed, in common form, of the real estate, and he delivered to me the horse, and gave me his note for four hundred dollars, in payment of the same, and gave me a mortgage back of the same real estate, to secure the payment of the note. I supposed at the time I gave the deed that I had a good title to the real estate, but I ascertained afterwards that I did not own the same, and had no right or title thereto, and no right or authority to sell or convey the same. The horse which I received I valued at one hundred and fifty dollars.    The note still remains in my possession, but Chase has never paid any part thereof, and I have never called upon him to pay it or any part thereof. Chase occupied the real estate about two years after I gave him the deed, and then removed from the same, and has not

occupied it since. I have had no settlement with Chase on the subject.

In May, 1849, said Getchell attached said real estate as the property of Chase, and in the evening of the same day Chase informed me that Getchell had attached or was about to attach it. Upon looking at my mortgage deed from Chase, I found it had not been recorded. Chase said that his deed from me had never been recorded, and remarked that he thought he could make me secure, by delivering his deed into my hands; and went and got it and delivered it into my hands, we supposing at the time that it might have the effect of making me secure, either by reïnvesting the property in me, or by putting both deeds together, so that the same evidence which proved the execution of my deed to him, would also prove the mortgage back at the same time. I retained my note and mortgage against Chase, and in a day or two was advised by my counsel that the delivery by Chase, of his deed to me, would not have the effect of reïnvesting the property in me, or of affording me any security; and nothing further was done about it, or claimed under it by me. The deed remained in my possession until September 8, 1851, when I produced it at Getchell's request, and it was annexed to Chase's deposition, then being taken by Getchell. I have not had the deed since, but Getchell has had the same. At the time of the sale, as I have since been informed and believe, Chase was in debt to a larger amount than he was able to pay, and was indebted to Getchell, a portion of which debt this action was brought to recover; but I had no knowledge or information at that time of his indebtedness. Before the service of the plaintiff's writ upon me, I was summoned as trustee in an action brought by Stickney & Tuck against Chase, and me as his trustee, which action was entered in court February term, 1852. I made substantially the same disclosure in that action as in this, and was adjudged trustee by the

court, at September term, 1852, without any particular examination by the court, and execution issued against me for $77.28, which is still unpaid.

It was agreed by the parties that the questions arising upon the foregoing answer of the trustee might be transferred to the Supreme Judicial Court.

*Wood,* for the plaintiff.

Dodge agreed to sell Chase certain real estate, which he failed to do; and in consideration that Dodge would do so, Chase let Dodge have the horse. Dodge failed to convey the same, and Chase had a right to bring an action for the horse. *Richards* v. *Allen,* 5 Shep. 296; *Lyon* v. *Annable,* 4 Cowen 350; *Evans* v. *Savage,* 14 Mass. 425; *Pipkin* v. *Jones,* 1 Humphrey 325.

But if a recision of the contract is necessary to maintain the action, then the re-delivery of the deed by Chase to Dodge, and the acts of the parties in relation to the same, has that effect.

*Stickney,* for the trustee, took the following positions:

1. The trustee cannot be charged on account of having in his hands any property of the principal defendant.

2. He cannot be charged on account of there being any debt due from him to the principal. The facts show no such debt, but the contrary.

3. The claim, if any, is for unliquidated damages, and the remedy lies in tort, and for that reason the trustee cannot be charged. Cushing's Trustee Pro., secs. 58, 61; *Paul* v. *Paul,* 10 N. H. 117; *Dispatch Line Packets* v. *Bel. Man. Co.,* 12 N. H. 205; *Foster* v. *Dudley,* 30 N. H. (10 Foster) 463.

EASTMAN, J. The disclosure of the trustee shows no fraud between the parties, either in fact or in law, in the sale and conveyance of the land. The trustee states that

at the time he gave the deed he supposed he had a good title to the premises. He also states that he had no knowledge or information at that time that the principal was in debt. Believing that he was the owner of the land, he conveyed it to Chase by quitclaim deed, and Chase, in consideration therefor, gave him a horse worth $150, and his note and a mortgage on the land for the balance of the payment money. This change of property between them, so far as appears from the disclosure, was in the ordinary course of business, and in good faith; and, no fraud being disclosed, the question does not arise whether upon that ground the trustee could be charged. If fraud appeared, a different question would be presented. *Hutchins* v. *Sprague,* 4 N. H. 469; *Green* v. *Doughty,* 6 N. H. 576; *Boardman* v. *Cushing,* 12 N. H. 105.

The case presented, then, is this: The trustee gave to the principal debtor a quitclaim deed of a piece of land to which he had no title; supposing, however, at the time, that he had, and received in part payment therefor a horse worth $150, which he now holds. This transaction being in good faith, can the grantor of the land be charged as trustee for the horse which he received as part consideration for the deed? If so, it must be upon one of two grounds: either that the contract and sale were rescinded between the parties, or, that the title to the land having failed, the trustee cannot legally retain the consideration received.

As a general rule, a trustee cannot be charged unless at the time of the disclosure the principal defendant had a right of action against him for some indebtedness or property in his possession, or unless the trustee had in his hands property belonging to the principal, which the latter had the legal right to take and carry away. *Greenleaf* v. *Perrin,* 8 N. H. 273; *Boardman* v. *Cushing,* 12 N. H. 112.

Nor can a trustee be charged on account of any tort, although a right of action exists in favor of the principal;

nor where the claim is for unliquidated damages only. *Paul* v. *Paul*, 10 N. H. 117; *Despatch Line* v. *Bellamy Man. Co.*, 12 N. H. 205; *Foster* v. *Dudley*, 30 N. H. (10 Foster) 463.

The contract between the principal and trustee, by which the land was conveyed, has never been rescinded. The putting of the deed into the hands of the trustee, as set forth in the disclosure, was done for the purpose of securing the trustee for the note which had been given to him, and in consequence of his mortgage not having been recorded. There is nothing showing that the parties, at that time, had any doubt that the trustee had a good title to the land when the conveyance was made, or that his deed passed the title to the principal. The deed was placed in his hands with the idea of giving him some security, and not with the belief that there was any uncertainty about the title, or with the intent of rescinding the contract. If the object had been to rescind and cancel the contract, the note and mortgage would have been given up, or at least demanded, but no intimation of that kind was made by either party.

In order to give a party the right to rescind a contract, there must be a refusal by the other party to perform the agreement on his part. There must be a substantial fault resting on him. And the party seeking to make the recision must restore, or offer to restore, what he has received, within a reasonable time; so that the parties may be replaced in their original position. *Colville* v. *Besley*, 2 Denio 139; *Moyer* v. *Shoemaker*, 5 Barb. Sup. Ct. 319; *Kimball* v. *Grover*, 11 N. H. 375; *Concord Bank* v. *Gregg*, 14 N. H. 331; *Evans* v. *Gale*, 21 N. H. (1 Foster) 240; *Webb* v. *Stone*, 24 N. H. (4 Foster) 282.

No act was done in this case, by either party, towards rescinding this contract. The trustee never refused to execute the deed of the land, and at no time returned, or offered to return, the horse or note, after the deed was

given. And, on the other hand, the principal did not refuse to give his note and deliver the horse, according to the agreement; nor has he, since the execution and receipt of the deed, delivered it to the trustee, with the intent of cancelling the contract between them. What he did was for the purpose of avoiding the attachments by his creditors, and to give the trustee security.

On the ground, therefore, that the contract has been rescinded, no action could be maintained by the principal against the trustee, for the horse, nor could the principal legally take the horse from the trustee's possession; and consequently the trustee cannot be charged upon this view of the case.

If the trustee is chargeable at all, it must be upon the ground that, having sold and conveyed land to the principal, to which he had no title, and having received the horse in part payment therefor, he is liable to the principal in consequence of want of title to the land.

Upon the question, how far and to what extent a failure of title to land, conveyed with covenants of warranty, is a good defence, as between the original parties, to an action for the consideration money, the authorities are not agreed. Chancellor *Kent,* after examining and stating several authorities upon both sides, says that the question is left in a state of painful uncertainty; but he adds: "I apprehend that in sales of land the technical rule remits the party back to the covenants in his deed; and if there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money, even on a failure of title;" and that this is the strict English rule both at law and in equity. 2 Kent's Com. 473; *Medina* v. *Stoughton,* 1 Salk. 211; *Roswell* v. *Vaughan,* Cro. James 196; *Bree* v. *Holbeck,* Doug. 654; *Johnson* v. *Johnson,* 3 Bos. & Pull. 170; Cooper's Eq. 311.

In *Lloyd* v. *Jewell,* 1 Greenl. 352, *Mellen,* C. J., says,

that in an action on a note given for the price of land conveyed by the promisee to the promisor by deed containing the usual covenants of seizin and warranty, the action being between the original parties, a total or partial failure of title, or want of title in the grantor at the time of the conveyance, is no defence.

Other decisions sustain the same doctrine. *Wadsworth* v. *Smith,* 10 Shep. 562; *Johnson* v. *Jones,* 13 Smedes & M. 580; *Smith* v. *Armistead,* 6 Ala. 785; *Mobley* v. *Keyes,* 13 Sm. & M. 677.

On the other hand, there are numerous American authorities which hold that a total failure of title to the land is a good defence to a suit to recover the consideration, notwithstanding the grantee has a deed with full covenants. *Frisbie* v. *Hoffnagle,* 11 Johns. 50; *Rice* v. *Goddard,* 14 Pick. 293; *Keer* v. *Kitchen,* 7 Barr 486; *Scudder* v. *Andrews,* 2 McLean 464; *Washburn* v. *Picott,* 3 Devereux 390; *Taylor* v. *Fuhune,* 1 Rich. 52; *Campbell* v. *Brown,* 6 How. (Miss.) 106; *Mason* v. *Wait,* 4 Scam. 127; *Gorham* v. *Reeves,* 1 Smith 239; *Swan* v. *Ewing,* 1 Morris 344.

In *Tillotson* v. *Grapes,* 4 N. H. 444, which was an action upon a note given in part consideration for an agreement to convey a lot of land, *Richardson,* C. J., in the course of the opinion, uses this language : " Nor do we see any injustice, where the land has been conveyed with warranty, and a note given for the price, in permitting the maker of the note to elect to consider the contract at an end if nothing passed by the deed." The case itself did not require a decision going the length of the language of the learned Chief Justice, but the dictum is worthy of citation upon this side of the question.

In *Chase* v. *Weston,* 12 N. H. 413, it was held that where a conveyance of land has been made by a deed, executed with covenants of warranty, and a note has been received in consideration of the conveyance, a partial failure of title will not constitute a defence for the note, but the remedy

of the party must be by suit on the covenants of his deed. But the court in that case appear to regard the question, whether a total failure of title is a defence, as not settled. In *Drew* v. *Towle*, 30 N. H. (10 Foster) 531, 538, where the price of a tract of land to which there was a total failure of title, was included in a note, the amount was allowed in offset to a suit upon the note, the court remarking, "no question upon this point is suggested." See also *Drew* v. *Towle*, 27 N. H. (7 Foster) 412, where it was held that partial failure was a defence *pro tanto*, provided the damages could be ascertained by mere computation.

In some jurisdictions it has been decided that the purchase money, having been paid, can be recovered back, when there is a total failure of title. *Michael* v. *Mills*, 17 Ohio 601; *Pipkin* v. *James*, 1 Humphrey 325. But such is not the current of the authorities; for although many of them hold that failure of title is a good defence to a suit on a note given for the consideration, yet, that, in the absence of fraud, the money having been voluntarily paid, it is not a sufficient ground for a recovery back, and that resort must be had to the covenants in the deed. *Keer* v. *Kitchen*, 7 Barr 486; *Treat* v. *Orono*, 26 Maine 217; *Battle* v. *Rochester City Bank*, 5 Barb. Sup. Ct. 414; *Evans* v. *Dendy*, 2 Speer 9; *Cope* v. *Williams*, 4 Ala. 362.

The conveyance in the present case was not a deed with covenants of warranty, but the ordinary one of release and quitclaim; and in such a case it has been held that want of title in the grantor is not a defence to a suit for the consideration, unless fraud is shown. *Perkins* v. *Rumford*, 3 N. H. 522.

And it appears to be well settled that an action to recover the money paid as the consideration for a quitclaim deed, cannot be maintained; for it is paid voluntarily, and the grantee takes the title at his own risk. *Gates* v. *Winslow*, 1 Mass. 65; *Emerson* v. *Washington*

*County,* 9 Greenl. 94; *Loper* v. *Stevens,* 2 Shep. 133; *Higley* v. *Smith,* 1 Chipman's R. 409; 2 Kent's Com. 473.

And if the money which is paid as the consideration for a quitclaim deed cannot be recovered back, upon the same principle any other consideration that may be given cannot be reclaimed.

The principal defendant, then, in this suit could not maintain an action for the horse which he gave in part consideration for the deed of the trustee, unless he could show fraud in the sale; a fact which does not appear in the case. He has got all he bargained for; the trustee's right to the land. And whatever that might be, was for him to ascertain before he completed the contract and took the deed. The horse was delivered to the trustee voluntarily, and for a consideration fairly agreed upon; and, as soon as delivered, it became the property of the trustee.

And if the principal can maintain no action for the horse, and has no right to take him into possession, then, upon the principles already laid down, the

*Trustee must be discharged.*