Aug. 12,
1875.            VAUGHAN v. MORRISON.

*Pleading—Effect of judgment discharging trustee in action by administrator of the defendant.*

In an action of trover, the defendant filed a brief statement, alleging, in effect, that before the bringing of this suit he had been summoned as trustee in certain actions commenced by one B. against the plaintiff's intestate, in which he was sought to be charged for the same property; that judgment was duly rendered in those suits, discharging him as such trustee; that the appointment of this plaintiff as administrator was procured by the same creditor, B., for the purpose of bringing the present action against him for the same property. *Held*, that the judgments in the trustee suits did not constitute a bar to the maintenance of the present action, by way of estoppel, inasmuch as neither the parties nor the issue were the same; and that the brief statement must be rejected.

TROVER, against the defendant, to recover for the conversion of the goods and fixtures in a saloon, and for a billiard table. The defendant pleaded the general issue, and filed a brief statement, of which the following is a copy:

The plaintiff will take notice, that, upon the trial of this action, the defendant will rely upon the following defences: That on the eighth

day of May, 1867, one John G. Butler caused two suits to be commenced in the supreme judicial court for Belknap county, against said Whipple as defendant and said Morrison as trustee, one of said suits being in the name of Alfred E. Tilton as plaintiff, for nine hundred dollars, money had and received, and the other in the name of himself as plaintiff, for five hundred dollars, money had and received; that on the third day of June, 1867, said Butler caused a similar action to be commenced in the same court, in the name of said Tilton as plaintiff, for eight hundred dollars, money had and received; that on the ninth day of August, 1867, said Butler caused a similar action to be commenced in the same court, in the name of said Tilton as plaintiff, for six hundred dollars, money had and received, and upon a note for five hundred and ninety-seven dollars and thirty cents, signed by said Whipple and payable to John G. Butler & Co., or order, and by them indorsed; that said saloon property and billiard table were attached upon the writs in said actions, but were left in the possession of said Morrison, who gave to the officer a receipt therefor; but said attaching creditors elected to pursue their remedy against said Morrison as trustee, as hereinafter mentioned, and thereby relinquished and abandoned said several attachments; that said several actions were duly entered at the next September term of said court, and continued from term to term until the September term, 1871; that on the twenty-ninth day of January, 1867, said Whipple gave to John G. Butler & Co. four promissory notes, as follows, viz., one for $250, payable in sixty days, one for $250, payable in ninety days, one for $250, payable in four months, and one for $597.30, payable in five months, all payable to said Butler & Co., or order; that the cause of action in said first named Tilton suit was one or both of said first two notes; that the cause of action in said second Tilton suit was said third named note; that the cause of action in said third Tilton suit was said last named note; that the cause of action in said Butler suit was one of said first two notes, or the same is unknown to this defendant; that the defendant believes that said Butler & Co. have at all times remained the owners of said notes, or are liable thereon as indorsers, but if the same or any of them were sold to the said Tilton, said Butler has at all times retained the management and control of said Tilton's actions as agent for said Tilton; that said notes were given for liquors illegally sold by said Butler & Co. to said Whipple, and were transferred to said Tilton to avoid a defence on account of the illegality of said sale; that the note or cause of action in the suit in favor of said Butler originated in some way, as the defendant believes, in a claim of said Butler & Co. against said Whipple, for liquors illegally sold to him by said Butler & Co.; that on the twenty-first day of January, 1869, said Whipple died, leaving no goods or estate whatever; that on the sixteenth day of March, 1869, said Butler, acting for himself or his said firm and said Tilton, procured the appointment of said Vaughan as administrator of said Whipple's estate; that said Vaughan has never returned any inventory, nor in any man-

ner acted as administrator for the benefit of the estate, but permitted his name to be used as administrator, for the purpose of enabling said Butler, for himself or his said firm or as agent for said Tilton, to prosecute said actions against said Morrison; that after the death of said Whipple, the present defendant repeatedly, and particularly at the September term of court in 1870, moved by his counsel that said actions be dismissed, upon the ground that, if a verdict and judgment should be rendered in his favor, the said Butler or Tilton might institute an action for said property in the name of said Vaughan as administrator, and subject said Morrison to another trial; but the counsel for the then plaintiffs objected, and contended that the questions in controversy might be tried in those actions instead of by a suit in favor of the administrator; and the court so held, it being understood that, in the event of the trustee being charged, the proceeds should be justly apportioned between the creditors of said Whipple's estate, and that if the trustee should be discharged no other action should be brought against him; and the court ruled that the then plaintiffs might be permitted to prosecute said actions, first indemnifying the administrator against all loss, cost, damage, or expense growing out of the same; that on the twenty-eighth day of March, 1871, the said Butler, in his own name, and as the defendant believes for his benefit, furnished said indemnity; that the trustee having pleaded that he was not chargeable, and the plaintiff (Tilton) having joined that issue, said first named action was tried before a jury at the September term of court, 1871, who returned their verdict that the trustee was not chargeable, on which judgment was duly rendered; that at the November adjourned term of said court, 1871, the trustee was duly discharged in said other three actions; that on the twenty-first day of August, 1872, the said Butler procured the present action to be commenced to recover for the conversion of the same saloon property and billiard table; that the estate of said Whipple was rendered insolvent at a term of the probate court, held on the third Tuesday of November, 1871; that the claims against said estate, as allowed by the commissioner, whose report was returned to the probate court on the third Tuesday of June, 1872, were as follows, viz., J. G. Butler $305.50, A. E. Tilton $1,465.54, E. A. Hibbard $74, S. B. Smith $42.75, A. L. Morrison $51; that no creditor of said Whipple, except said Butler and Tilton, has taken any part, directly or indirectly, in commencing or prosecuting this action, nor is desirous that it shall be any further prosecuted; that said Vaughan did not direct this action to be commenced, nor have any knowledge of it before it was commenced, nor has he taken any part or interest in the case, unless it be to permit the same to be prosecuted in his name by said Butler or Tilton, upon being indemnified against cost or expense; that the said Butler, for himself or for his said firm or as agent for said Tilton, having elected to put said Morrison on trial as trustee for the purpose of settling the title to said property, has precluded himself from bringing an action in any other form to try the questions in controversy, and has

precluded the maintenance of this action; that the said Vaughan, by permitting said trustee suit to come to trial for the purpose of settling in that form the questions in controversy in relation to the purchase of said property, instead of defeating the said trustee suits by representing the estate insolvent, as it was his duty to do, has precluded himself from maintaining this action; that the judgment of the court upon said verdict is a bar to the maintenance of this action, the said Butler, for himself or his said firm or as agent for said Tilton, having elected in what form of action he would try the controversy with said Morrison in respect to the title to said property, and being bound by the decision therein, and the said Vaughan having elected to permit said controversy to be tried in that form, and being also bound by said decision. The plaintiff moved to reject the brief statement, which motion the court, STANLEY, J., *pro forma* denied, and the plaintiff excepted. The questions of law arising on said motion were transferred.

*Hibbard* and *Pike & Blodgett,* for the defendant.

It has been decided that a bill in equity will not ⁷ie to restrain the prosecution of this action, upon the ground that the defendant upon the trial can avail himself of his whole defence, and has no need of resorting to a court of equity. The following is a copy of the brief opinion delivered·by Judge LADD in *Morrison* v. *Vaughan,* December term, in this county, 1873:

"It is not seen how any greater or different effect can be given to the proceedings in the trustee suits here than they would have in the suit at law. If that judgment would be available to the plaintiff in this bill in equity by way of estoppel, it will be equally available as a complete bar to a suit at law; and, so far as I can see, no effect could be given to any agreement with respect to the prosecution and disposition of the trustee suits on the trial of this bill, which it would not have on a trial of the same issues at law." If, therefore, it can be made to appear that equity requires that the defendant shall no longer be harassed by Butler (or Tilton, which means the same thing), it is settled that he ought to have an opportunity of making it appear upon the trial of this case, and that the brief statement should be received. The brief statement, in substance, sets forth, and the defendant asks to be permitted to prove, that the real plaintiff in the action which was tried was the real plaintiff in all the actions then pending, representing the claims of $305.50, since allowed by the commissioner to Butler, and $1,46 ʒ.54 since allowed by the commissioner to Tilton, and that no other creditor of Whipple is in any way connected with this prosecution;—in other words, that the only real plaintiff in this case has already had one trial of the matter in controversy, at the time, in the manner, and before the tribunal, in which he elected to have it. It is familiar law, that he who, being entitled to choose between two things, makes his election, is bound by it. A widow, who deliberately elects to accept the provisions of a will in lieu of dower and homestead, cannot, after her share under

the will falls short, turn about and have her dower and homestead assigned to her. A vendor, who deliberately elects to give credit to an agent, knowing who the principal is, cannot, after the agent becomes insolvent, recover his debt of the principal. A party, entitled to bring either of two forms of action, who deliberately elects to bring one of them and goes to trial, cannot, after verdict and judgment against him, bring the other form, and be permitted to try the matters in controversy again. Suppose another of the cases, in the name of Tilton against Morrison as trustee, had been brought to trial: it is plain enough that the former judgment must, upon the trial, have been conclusive in favor of Morrison;—and, if the real plaintiff was the same in the case which stood in the name of Butler, then the same result must have followed in that also. And suppose, after discharging the trustee, the plaintiff (or plaintiffs) had been allowed to take judgment against the principal defendant in all the cases (which might easily have been done, Butler having charge of the administrator's side as much as of his own), and the executions recovered had been placed in the sheriff's hands, and the property receipted for demanded of Morrison, and, it not being delivered, an action had been brought against Morrison upon the receipt: is it not equally plain that the former judgment in favor of Morrison would have been conclusive against the maintenance of that action? It is true, Butler (or Tilton) might have stood on better ground by waiving the trustee process from the beginning, and levying such executions as they might have succeeded in obtaining upon the property, or, if it should not be produced, proceeding in the sheriff's name against Morrison as receiptor. But both remedies could not be pursued: that the issues in the two cases would be different would be immaterial. After electing one remedy, the party would be precluded from trying the other—see *Lamb* v. *Stone*, 11 Pick. 533. The creditors whom this plaintiff represents made their election to enforce their rights by way of the trustee process, instead of by trying the title to the property in a suit upon the receipt, or (after Whipple's decease) in a suit like the present. Had they prevailed in the former trial, Morrison would have been at their mercy. They could have forced him to trial in the remaining cases, and in Tilton's cases (also in Butler's, upon its being shown that the real party was the same in all the cases) he could not have been permitted again to try the question whether he had paid for the goods as he claimed he had. The former judgment would have furnished conclusive evidence that he was chargeable to the extent found by the former jury, subject only to such right of review, if any, as he may have been entitled to by law. Now, will this court hold that Butler (or Tilton) could thus experiment and trifle with Morrison, taking the benefit if the result should be satisfactory, and losing nothing except the costs of litigation if it should be unsatisfactory? Was Morrison the only party that had anything to risk? Shall his victory, gained after he had been dragged into court and held there in expensive litigation four years and a half, be fruitless to him? Butler appears to have thought that, by splitting his debt into as many

suits as he held notes, he might be entitled to as many trials as he had suits; but this is not law, nor justice either. If the real plaintiff was the same, whether there were one suit or four, one trial must suffice. We say it is clear, that, had Whipple remained alive, Butler (or Tilton) could not have been allowed to try such an experiment on one of their cases, and then, if unsuccessful, discharge the trustee in all the cases and take judgment against Whipple, and have another trial between the attaching creditor and Morrison, by seizing the property in controversy, upon all or any of their executions, or by bringing an action upon the receipt, for the benefit of all or any of the judgments. They could take their choice of remedies: they could not have both. *Spear* v. *Hill*, 54 N. H. 87, is not just like this case, but it is submitted that the estoppel in that case did not stand so strong as in this. "In considering the effect to be given to verdicts and judgments, courts will always have regard to the real parties to the suit." *Goodall* v. *Marshall*, 14 N. H. 170. Suppose Butler to be the real party in the case tried, and the sole creditor of Whipple: can there be a doubt that he would be precluded from maintaining this action in the name of Vaughan? Now, it is proposed to show that the real party in the case tried is the only party interested in this suit: wherein, then, do the facts of this case differ from those of the case supposed? It is not contended that if this case were brought in good faith by the administrator, in the general interest of creditors, the plaintiff would be precluded from maintaining it by what occurred in the Butler-Tilton trial and judgment; but we insist that Vaughan is no more the real party with whom we are contending, than he would be if Whipple, in his lifetime, had assigned his claim for the price of the goods to Butler (or Tilton), and this suit was now brought to recover it. The brief statement alleges that Butler procured the appointment of Vaughan as administrator; that Vaughan has never returned any inventory, nor acted as administrator for the benefit of the estate, but simply to aid Butler in collecting his claims; that Butler, being ordered by the court to do so, furnished an indemnity to Vaughan for permitting the original actions to proceed against him; that Butler procured the present action to be commenced; that no other creditor of Whipple is interested in it, nor desirous that it shall be prosecuted; that Vaughan did not direct the action to be commenced, nor have any knowledge of it before it was commenced, and has taken no part or interest in it except to permit it to be prosecuted upon being indemnified against cost or expense;—in short, that Butler is the moving spirit, "the power behind the throne," and Vaughan is simply a puppet in his hands. Had Vaughan been acting for the interest of the estate, he had but one duty to perform towards the trustee suits, and that was, to render the estate insolvent on the day he was appointed, and cause the suits to be dismissed at the March term, 1869. But there is another view disclosed in the brief statement, which materially strengthens our position, and makes the estoppel in this case complete. Morrison's counsel early foresaw the very difficulty in which he is now involved, and moved

" that the original action be dismissed, upon the ground that if a verdict and judgment should be rendered in his favor, the said Butler or Tilton might institute an action for said property in the name of said Vaughan as administrator, and subject said Morrison to another trial ; but the counsel for the then plaintiffs objected, and contended that the questions in controversy might be tried in those actions instead of by a suit in favor of the administrator ; and the court so held, it being understood that   *   *   if the trustee should be discharged, no other action should be brought against him." The counsel for Butler and Tilton, having insisted that the questions in controversy should be tried in those actions, and succeeded in inducing the court to hold so, their clients must now be bound by the result, whatever the effect might be, had Morrison willingly proceeded to trial.   Good faith and equity certainly require that the understanding between the court and the counsel upon both sides should now be carried out, and if equity requires this, then, according to the decision already made, this constitutes a valid defence in the present case.

*Whipple* and *H. Bingham*, for the plaintiff.

LADD, J.   It seems to me clear, that the judgment in favor of this defendant in the trustee suit cannot be a bar to the maintenance of the present action, for two reasons,—the parties are not the same, and the issue is not the same.

I do not find it alleged in the brief statement that Butler & Co. have remained the owners of the notes given January 29, 1867.   It is said that the defendant believes such to be the case, which is hardly a material or traversable allegation.   Suppose, however, the fact of such continued ownership were well stated, and that Butler alone is prosecuting the suit in the name of Vaughan, whom he has procured to be appointed administrator for that purpose : still, it would follow, that a recovery must be for the benefit of all the creditors, and if anything should be realized on such judgment, it must doubtless be administered and distributed according to law.

It is argued for the defendant, that an agreement is set up in the brief statement which constitutes an answer to the action, and we are referred to an observation made by me in delivering the opinion of the court upon a bill in equity, brought by the present defendant to enjoin the plaintiff from further prosecuting this suit, as sustaining that view. I should be sorry that any misapprehension should arise as to the ground upon which the demurrer to that bill was decided by the court. Whether I may have been mistaken in any suggestions made upon a point not necessary to the decision of the demurrer is of less consequence.   The case was not reported, because it was not thought to establish any new or settle any doubtful point not before adjudicated.   I think, however, it may be proper here to read the opinion as it was agreed to and announced in court.   The bill alleged, " that, on the twenty-ninth day of April, 1867, one John L. P. Whipple was the owner

of the stock in trade and fixtures in a certain saloon, situated in said Laconia, and also of a billiard table, then at Meredith village; that, on said twenty-ninth day of April, said Whipple was justly indebted to the plaintiff [this defendant] in the sum of about one thousand dollars; that, on said twenty-ninth day of April, the plaintiff purchased said property of said Whipple in good faith, for the price of eleven hundred and fifty dollars, and paid him one hundred and fifty dollars in cash, and the plaintiff's note for one thousand dollars; that, on the fourth day of May, 1867, the plaintiff and said Whipple, in pursuance of an understanding between them on said twenty-ninth day of April, made a settlement of the accounts and claims existing between them, and said one thousand dollar note having been fully paid, the said Whipple gave it up to the plaintiff; that the plaintiff, on said twenty-ninth day of April, took possession of said property, and subsequently disposed of the same." Then follow various allegations which I believe are identical with those of this brief statement, the brief statement being copied literally and wholly from the bill,—the first five allegations quoted above being omitted, probably for the reason that those fa ts may be shown under the general issue. The opinion of the court, read by myself, was as follows: "We think the demurrer should be sustained, mainly for the reason that the bill shows that the plaintiff has a perfect defence to the suit at law. It is alleged that he bought the property in controversy of Whipple in good faith, paid him for it, and took possession of it before it was attached in any of the suits;—and to the same purport is the allegation that Whipple died January 21, 1869, leaving no goods or estate whatever. If these allegations are true, the suit at law must fail; and no reason is shown why their truth may not be as well and conveniently tried there as here. If the demurrer were overruled, and an answer filed denying these material allegations, the same issue would be presented as if they were pleaded in the suit; and the loss of W. L. C. Morrison's testimony (he being an important witness who had died pending the suit) would be an equal misfortune to this plaintiff in either event.

"Again: it is not seen how any greater or different effect can be given to the proceedings in the trustee suits here than they would have if shown in the suit at law. If that judgment could be available to this plaintiff in this bill in equity by way of estoppel, it will be equally available as a complete bar to the suit at law; and, so far as I can see, no effect could be given to any agreement, with respect to the prosecution and disposition of the trustee suits on the trial of this bill, which it would not have on a trial of the same issues at law.

"In a word, our view is, that a trial of this bill would be a trial of the merits of the suit at law, and of nothing else. If the facts set up in the bill are not disputed, or if they are found to be true, they constitute a perfect defence to the suit. If they are disputed, the same questions of law as well as of fact will be presented, whether they be raised in one proceeding or the other. The plaintiff, therefore, needs no injunction, and is entitled to none, and the demurrer must be sustained."

This seems to make it quite clear that the demurrer was decided, upon the ground that the allegations of the bill with respect to a sale, &c., of the goods to Morrison, showed a defence to this suit. Admitting that the remark as to the effect that might be given in this suit to the supposed agreement was too broad, the most that can be said of it is, that it was an erroneous *dictum* of a single judge, and does not affect the decision of the court. The remark would have been modified if it had been in my mind that the supposed agreement was made in the trustee suits and before the present action was commenced. It is certain that great doubts were entertained whether the bill showed an agreement to be enforced in equity. The language of the bill (which is also the language of the brief statement), on this point, is quite remarkable, if the defendant meant to set up a solemn agreement, made in open court, that in case the trustee should be discharged no other action should be brought against him. It is stated that the court ruled that the then plaintiff might be permitted to prosecute said actions. It does not appear that this ruling was made in consequence of any agreement, or was based upon or made with a view of facilitating and carrying into effect any mode of adjustment already settled upon by the parties between themselves. Nothing is stated to show that it was not an ordinary ruling upon a question of law, to which either party might have excepted; nor is it alleged in the bill or brief statement, that the understanding as to whether any other action should be commenced was mutual. The language is, " it being understood * * that, if the trustee should be discharged, no other action should be brought against him." From the connection in which this is said, it really does not seem quite clear whether the understanding was with the court, or a mutual arrangement and understanding between the parties, or the understanding of the defendant alone. If an agreement between the parties was made in open court, and subsequently acted on, of such character that a court of equity could and ought to have decreed a specific performance, it would have been a very simple thing for the defendant to say so in his bill. By doing that, and omitting the other allegations quoted, which showed a complete defence at law, the question as to the effect to be given such agreement, if proved, would have been presented to the court in a very different form, and would probably have been examined with more care.

I am of opinion that the brief statement does not show a legal answer to the action, and that the motion to reject it should be allowed.

CUSHING, C. J. Three principal questions arise in this case:—
1. Could the verdict and judgment alleged in the brief statement be pleaded in bar to the plaintiff's action, supposing that the parties were the same? 2. Are the parties so far the same, *i. e.*, is there such a privity between the plaintiffs, in the suit against Morrison as trustee and this plaintiff, as would cause the matter, which would be a bar against those plaintiffs, to be also a bar in this suit? 3. If the verdict

and judgment in the suit against the defendant as trustee cannot be pleaded in bar in this suit, can the agreement alleged in the brief statement be so pleaded ?

The matter settled in the action against the trustee was, according to the record, whether he was chargeable or not chargeable. The point to be settled in the present suit is, whether the defendant has converted to his own use property belonging to the plaintiff.

We understand from the case and the brief statement, that in each case the real question which is to be determined is, whether or not the defendant, Morrison, is entitled to hold the property in dispute against the creditors of the plaintiff's intestate, Whipple. We understand the allegation to be, that the defendant, Morrison, so had the property in his hands, that, if his title was not good against these creditors, he would have been charged for it as trustee, and that therefore the allegation would be, if the attempt were made to plead specifically, that the fact, on which the question whether the trustee was or was not chargeable depended, was the fact whether the defendant's title to the property was good as against the creditors of Whipple, and that the question of the defendant's liability in the present suit depends upon the same fact; and that therefore the merits of the present action were substantially tried in the former action.

It is apparent on the face of the matter that this question cannot be directly in issue in the pleadings in either case. The issue in the first action was, as it appears in the case, whether the trustee was chargeable or not; and the issue in the present action must be, whether the defendant is guilty or not guilty of converting the property as alleged in the declaration. A special plea, setting out that the property, which is the subject-matter of the suit, was at the time of the alleged conversion the property of the defendant, and denying the plaintiff's property, would be held bad, on a special demurrer, as being equivalent to the general issue; and therefore the question could not, in the due course of the action, become a part of the record.

The verdict and judgment in the former action could not be pleaded in bar to the present action.

The case of *King* v. *Chase*, 15 N. H. 9, is directly in point, and is decisive of this part of the case. There, the plaintiff had brought an action of trespass against the defendant for the act of his deputy in taking and carrying away certain corn and hay. He had previously brought an action of trover against the same deputy, for the alleged conversion of a quantity of oats. The defendant alleged, that the plaintiff's title to the property described in the present suit was by virtue of a mortgage from one Oliver King to himself; that his title to the oats, which was the subject-matter to the former suit, was by virtue of the same mortgage; that the only question tried in the action of trover was as to the validity of that mortgage, which was found void against the creditor, who was the real defendant in both suits.

The masterly and exhaustive discussion of that case by C. J. PARKER leaves nothing to be desired. He shows that the judgment is conclusive

only upon the matter which was directly in issue upon the former trial; that by the matter in issue is to be understood that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading; that facts, offered in evidence to establish a matter which is in issue, are not themselves in issue within the meaning of the rule, although they may be controverted on the trial.

These principles are easily applied, and are conclusive on the point in question. The defendant's ownership of the property, though a fact doubtless controverted in the first trial and to be tried in the present suit, is not the matter alleged by the plaintiffs or controverted by the defendants in their pleadings. Therefore the former verdict and judgment could not be pleaded in bar to the present action, if the parties were held to be substantially the same. Whether or not they are so, need not be settled in the present action.

The only question remaining is as to the alleged agreement. It is not alleged that the agreement was reduced to writing or put on file. *Hanover* v. *Weare*, 2 N. H. 131, *Alton* v. *Gilmanton*, 2 N. H. 520, *Fernald* v. *Ladd*, 4 N. H. 370, *Olcott* v. *Banfill*, 7 N. H. 469, are cases in which this matter is discussed. The general doctrine derived from them is, that if agreements are made in writing in court, and put upon the files, they will be specifically enforced, and that, if an agreement is entitled as of term, it will be taken to have been made in court; and that agreements not so made will not be specifically enforced. The alleged agreement, therefore, cannot be enforced by the court, and the brief statement, being insufficient, must be rejected.

SMITH, J. The defendant's counsel, in his argument, says,—"It is not contended that, if this case were brought in good faith by the administrator in the general interest of the creditors, the plaintiff would be precluded from maintaining it by what occurred in the Butler-Tilton trial and judgment."

I. It may be conceded, for the purposes of this occasion, that Butler was the real party in interest in the suits brought in the name of Tilton against Whipple, and Morrison as his trustee. Conceding this, are the parties to the trustee suits and to this action the same? or, are they privies, either in blood, in estate, or in law? In the trustee suits, Butler was plaintiff, Whipple was principal defendant, and Morrison was trustee. Before the trial Whipple died, and Vaughan, as his administrator, came in to defend. As to the issue between the plaintiff and trustee, the principal defendant was not a party, and had no interest in it or control over it, and the determination of that issue in favor of the trustee could in no way prejudice or bar his right to maintain a suit against the trustee. The trustee process is joint in form, but is considered a several process against the principal defendant and trustee. *Ingraham* v. *Olcock*, 14 N. H. 243.

In *Wallace* v. *Blanchard*, 3 N. H. 398–9, this matter is clearly stated by RICHARDSON, C. J., thus: "This process against a principal debtor and his trustee in fact embraces, in one writ, always at least two

distinct suits, on two distinct causes of action, between different parties; and the object of the plaintiff is to obtain at least two distinct judgments. The object of one of these suits is a judgment against the principal debtor in favor of the plaintiff, upon a declaration in the usual form. To this suit, the plaintiff and the principal debtor are the only parties. The trustee is as much a stranger to it as if his name were not in the writ. * * The object of the other suit embraced in this process is a judgment against the trustee for the amount of the debt due from him to the principal debtor. To this suit, the plaintiff and trustee are the only parties: the principal debtor is a stranger to this suit. It has been decided that a judgment in favor of the trustee, in this suit, does not find the principal debtor; but he may, in an action in his own name, still show that there was a debt due to him. *Groves* v. *Brown*, 11 Mass. 334. This could not be if he were properly a party to the suit between the plaintiff and the trustee, because he would in that case be bound by the judgment."

In this suit, Vaughan, as administrator of Whipple, is plaintiff, and Morrison is defendant, and the brief statement sets forth that it is brought to recover for the same property for which it was sought in the former suits to charge Morrison as the trustee of Whipple. If Butler had prevailed in the former suits, he would have appropriated the avails of his judgment in discharge of his debt against Whipple. If the administrator succeeds in this suit, even though it is prosecuted by Butler in his name, the avails of the judgment become assets in the hands of the administrator, and are appropriated by law,—1st, to the payment of the expenses of administration, including funeral expenses and taxes; 2d, to the payment of preferred claims; 3d, to the payment of the other creditors; and 4th, the balance, if any, to the heirs of Whipple. The trustee suits were prosecuted by Butler for his own exclusive benefit. This suit is prosecuted in the administrator's name for the benefit of the estate, that is, of the creditors and heirs of Whipple. In the former suit, but one creditor (Butler) was heard: here, all the creditors and the heirs, represented by the administrator, are entitled to be heard. The judgment in *Butler* v. *Whipple & Morrison, trustee,* is clearly *res inter alios acta.* If Whipple were alive, it is clear he could sustain this suit. *Wallace* v. *Blanchard, supra.* No reason is suggested why Vaughan as his legal representative may not do the same, except that he permitted Butler to use his name as administrator, and understood that the former trial should be final. Nor do I think it makes any difference that Butler prosecutes this suit in the name of the administrator, if the administrator, from want of funds or for any other reason, does not choose to incur the expense of a lawsuit. Butler (including the debt proved in Tilton's name) is a heavy creditor, and if he sees fit to advance the funds to prosecute this suit, he does so only for the benefit of the estate, and can reap only his proportionate share in the benefits that may result therefrom.

II. Nor are the issues the same. In the former suit the issue was, whether the trustee was or was not chargeable. Under that issue, the

plaintiff could show in evidence that the principal defendant had a right of action against the trustee for some indebtedness or property in his possession, or that he had in his hands property belonging to the principal, which the latter had the right to carry away ; but he could not be charged on account of any tort, although a right of action might have existed in favor of the principal, nor if the claim was for unliquidated damages only. *Getchell* v. *Chase*, 37 N. H. 109–110.

In this case the issue is, whether the defendant has converted the property to his own use.

By " matter in issue," says PARKER, C. J., in *King* v. *Chase*, 15 N. H. 9, is meant " that matter upon which the plaintiff proceeds by his action and which the defendant controverts by his pleadings, which is in issue." But facts offered in evidence to establish matters in issue are not themselves in issue within the meaning of the rule, although they may be controverted on the trial. Deeds which are merely offered in evidence are not in issue, even if their authenticity be denied."

Assuming for the moment that the parties are the same, the issues in the two suits are not the same. Under the issue of chargeable or not chargeable, evidence was introduced upon the question of the ownership of the property in dispute, involving the question of a valid purchase of the same from Whipple by Morrison : the same evidence would be admissible in the present suit under the issue of guilty or not guilty, and the fact of ownership and of a valid purchase undoubtedly was and is in controversy in the evidence ; still it is not the matter put in issue by the parties in their pleadings, and for that reason cannot be pleaded in bar of this suit.

Neither the judgment of a concurrent or exclusive jurisdiction is: evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter to be inferred by argument from the judgment." *Duchess of Kingston's case*, 11 St. Tr. 261 ; *King* v. *Chase, supra*, 15.

III. Assuming as most favorable for the defendant that " the understanding " set forth in the brief statement was mutual, yet it does not appear that it was reduced to writing and placed on file, or was entered upon the docket by the clerk. When this is not done, the court will not enforce an agreement entered into by parties to an action, or by their counsel, but will leave the aggrieved party to his remedy by action. *Fernald* v. *Ladd*, 4 N. H. 370.

The motion to reject the brief statement must be allowed.

*Exceptions overruled.*